Nehemiah Tunis, Respondent, *v.* George A. Leutze, Appellant.

February 14, 1876.

1. A business transaction between parties who afterwards become partners may be settled in a suit at law, notwithstanding such subsequent partnership. The partnership affairs have no relevancy to such a suit.

2. It is not erroneous to permit a witness to refresh his memory from entries made by himself in the books of one of the parties to the suit.

Appeal from St. Louis Circuit Court.

*Affirmed.*

*Gottschalk*, for appellant, cited: Moriss *v.* Martin, 25 Mo. 360; Pattison *v.* Blanchard, 6 Barb. 537; Case *v.* Brush, 2 Cai. (N. Y.) 293; Niven *v.* Spikeman, 12 Johns. 401; Murray *v.* Bogert, 14 Johns. 318; Halstead *v.* Schmelzeh, 17 Johns. 80; Westerly *v.* Evertson, 1 Wend. 432; Atwater *v.* Fowler, 1 Hall (N. Y.), 180; Gridley *v.* Dole, 4 Comst. (N. Y.) 486; Hissrick *v.* McPherson, 20 Mo. 310; Ang. on Car., secs. 495, 503, and note; 1 Greenl. on Ev., secs. 27–171, 204, 205; Eves *v.* Miller, 19 Barb. 196.

*Daniel T. Potter*, for respondent, cited: Pars. on Part. 271, and cases cited.

GANTT, P. J., delivered the opinion of the court.

The petition in this case stated that on December 29, 1864, plaintiff agreed to send to defendant a lot of hoop-poles to be sold and accounted for by him. Plaintiff lived at Wellsville, Missouri; defendant at St. Louis. The petition goes on to state that plaintiff sent to defendant, pursuant to this agreement, 33,000 poles; that they were sold for $1,072.50; that the charges amounted to $203, and that the balance of $869.50 was due to him, for which he asked judgment.

The answer admits the contract; denies that plaintiff sent 33,000 poles; says that defendant cannot state the actual number; denies that he neglected to account for them, and insists that he has made full payment; denies that the poles sent were worth $1,072.50; claims that he paid $250 for freight on them; and, by way of counter-claim, asks judgment for $250 paid for freight, and $750 in money, making $1,000.

Plaintiff denied the matter set up as a counter-claim, which was in the following form:

" N. Tunis to George Leutze, Dr.
1865.

| | |
|---|---|
| To freight paid on hoop-poles.......... | $250.00 |
| To money paid for you at your request... | 750.00 |
| | $1,000.00 |

For which sum, with interest and costs, he asks judgment."

The matter was referred to Mr. Post, who reported that 33,000 poles were sent by plaintiff to the defendant, under the contract; that plaintiff informed defendant of the shipment at the time, and that defendant afterwards admitted the receipt of them; that they were worth in market $796.40, subject to commissions and freight amounting to $244.82, leaving a balance of $548.58, on which he allowed

interest from June 10, 1865, making $190.17, or a total of $738.75, for which the Circuit Court, confirming his report, gave judgment.

The defendant filed various exceptions to this report. He charged that the referee had admitted illegal evidence; second, that he had excluded legal evidence; third, that the finding was against evidence. These exceptions were expanded into nine subdivisions, and the points urged in argument before us are:

1. That there was a partnership between plaintiff and defendant, until the settlement of the business of which this action was not maintainable. But the contract under which these 33,000 hoop-poles were sent forward was anterior to, and wholly distinct from, a subsequent arrangement by virtue of which the defendant was to furnish plaintiff with money to purchase hoop-poles to be sent to defendant and sold on joint account. There is nothing in this objection.

2. That the plaintiff's books were admitted as evidence. This point is not well taken. A witness referred to entries contained in these books as memoranda made by *himself* at the time. He used them to refresh his memory and was able, *dehors* the memoranda, to state the facts which the memoranda referred to.

3. That interest was improperly allowed; and that the petition did not ask for interest.

This is a mistake. It does ask for " interest, damages, and costs of suit." The petition is, indeed, loosely drawn. It does not state *when* the defendant received the goods, nor when his failure to account for them occurred. The answer is equally vague, or more so, for defendant does not state the number of poles received by him, though he denies that he received 33,000. He says that he " cannot exactly state the amount." The petition, however, alleges a contract dated December 29, 1864, and defendant admits it. The answer further charges for freight paid in 1865, and the evidence shows that the poles were shipped soon after January

1, 1865. We see no error in this allowance of inter-- est.

4. That too little freight was allowed. The evidence reported by the referee fully disposes of this objection.

5. That defendant was charged with all the poles shipped, without proof that they reached him. We think the fair inference is they did reach him. If not, he was very culpa- ble in not giving notice to the plaintiff at the time—to say nothing of his admissions that they had come to hand.

6. That the referee disregarded the admissions of plaintiff in a former suit that he had only received $2,961 on partner-- ship account.

One of the things which excites surprise in this case is that defendant seeks to set up the alleged troubled and unset-- tled business which the parties embarked in after the ship- ping of these 33,000 poles as a reason why plaintiff should not have judgment on this separate matter. But either the subsequent matters, all of which occurred in 1865, are now settled and adjusted, or they are not. If they are, they clearly have no relevancy. We must presume that all proper credits and allowances have been made on both sides. If they have not been settled, no excuse is shown for the delay, and, clearly, this action is not the proper one in which to settle the partnership affairs. But any admis- sion of an unequivocal nature, made by either party at any time, is proper evidence to be weighed by the referee. In this case he refers to and explains the supposed admission, and we will not disturb his report on this ground. The evidence which such an admission furnishes is not unanswer-- able. Both parties were examined by the referee, and their evidence is reported. The conclusion reached by the referee satisfies us.

7. It is objected that the referee did not specially pass upon the counter-claim of defendant. We think he did do this in substance, and that no one could fail to perceive that such was the intention of the report. The counter-claim of

defendant is not pleaded in a manner that is to be commended, and the evidence disclosed an attempt to mingle the subsequent business, called a partnership, with the matter of this first contract, in a manner which has very much the appearance of studied confusion. We order the judgment to be affirmed. All the judges concur.